IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG - 2 2010

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| LORENA HICKEY, | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-CV-280-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

I. FINDINGS AND CONCLUSIONS

A.    Statement of the Case

Plaintiff Lorena Hickey ("Hickey") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for disability insurance benefits under Title

II and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act

("SSA"). In May 2005, Hickey applied for disability insurance and SSI benefits alleging that she

became disabled on March 28, 2003. (Transcript ("Tr.") 92-97, 756-58.) Her applications were

denied initially and on reconsideration. (Tr. 54, 737-55.) The ALJ held a hearing on May 10,

2007 (Tr. 807-839) and issued a decision on June 25, 2007 that Hickey was not disabled (Tr. 51-

1

69). Hickey filed a written request for review, and on January 14, 2008, the Appeals Council vacated the ALJ's decision and remanded the case so that the ALJ could, *inter alia*, obtain evidence from a medical expert to 1) clarify whether Hickey's impairments met or equaled an impairment in the Listing of Impairments,[1] 2) give further consideration to Hickey's physical and mental residual functional capacity, and 3) obtain supplemental evidence from a vocational expert. (Tr. 71-73.) The ALJ held a second hearing on May 2, 2008 (Tr. 840-77) and a third hearing on August 28, 2008 (Tr. 878-921). He issued a decision on October 1, 2008 that Hickey was not disabled because she was capable of performing her past relevant work as a "housekeeper/ cleaner." (Tr. 14-30.) Hickey filed a written request for review, and the Appeals Council denied her request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 7-10, 759.)

B.    Standard of Review

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful

---

[1] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

   A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence

in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

C.    <u>Issues</u>[2]

1. Whether substantive evidence supports the ALJ's finding that Hickey could perform her past relevant work as a housekeeping cleaner.

2. Whether the ALJ failed to adequately consider all of Hickey's vocationally significant impairments that were found by the State Agency Medical Consultants ("SAMCs") when determining her RFC.

3. Whether the ALJ erred by not considering the medical opinion evidence from a consulting examiner.

---

[2] The Court notes that Hickey, in her brief, specifically sets forth three issues to be considered by the Court. (*See* Pl.'s Brief ("Pl.'s Br.") at 1-2. However, in the body of her brief, Hickey addresses additional issues and arguments, even appearing at times to raise arguments related to one issue in one section that are really more applicable to a different issue in a different section. (*See* Pl.'s Br. at 12-21.) While such briefing makes it very difficult for the Court to identify exactly what issues are being raised and to properly address such issues, the Court has endeavored to address all of Plaintiff's issues herein.

D.    Administrative Record[3]

1.    Administrative Hearing

Hickey was born on September 19, 1966, and she has a high school diploma.  (Tr. 92,

810.)  At the first hearing on May 10, 2007, Carol Bennett, a vocational expert ("VE") testified

before the ALJ.  The ALJ asked Bennett to consider the following hypothetical:

> If the claimant were limited to work at the light exertional level, which permitted
> an intermittent opportunity to alternate between sitting and standing and
> performed at the low end of detailed work instructions, no requirement to
> collaborate with coworkers and no requirement to work outdoors, would she be
> able to perform the prior work?

(Tr. 829.)  In response to this question, Bennett answered "No, sir."  (*Id.*)

At the third hearing on August 28, 2008, Todd Harden, a VE, testified before the ALJ.

The ALJ asked Harden to consider the following hypothetical:

> If the claimant were limited to work at the light exertional level which did
> not involve work outdoors with a low end of detailed work instructions,
> superficial contact with the public and infrequent collaboration with co-workers,
> would there be any of her prior work she'd be able to perform?

(Tr. 913.)  In response to this question, Harden answered that Hickey would be able to perform

her prior job as a housekeeping cleaner.  (*Id.*)  Upon cross-examination by Hickey's attorney,

Harden stated, *inter alia*, that Hickey would not be able to perform her prior job as a

housekeeping cleaner if she had to work in an "extremely clean" place; had any exposure to sun,

heat, gases, or fumes; had an inability to maintain persistence and pace; or had a limited ability

to walk great distances, stoop, squat, or bend over.  (Tr. 914-17.)

---

[3] Because the record in this case is over nine-hundred pages long, the Court will not go through a detailed
recitation of all the evidence.  Instead, the Court will focus on the evidence that is relevant to the issues raised by
Hickey in her brief.

2. ALJ Decision

The ALJ, in his October 1, 2008 decision, found that Hickey had not engaged in any substantial gainful activity since March 28, 2003, the alleged onset date of Hickey's disability. (Tr. 19.) He further found that Hickey had the severe impairments of status post melanoma, minor surgeries to remove dysplastic lesions, depression and anxiety. (Tr. 19-20.) Moving to the next step in the sequential evaluation process, the ALJ found that none of Hickey's impairments met or equaled the severity of any impairment in the Listing. (Tr. 20.) In making this determination, the ALJ stated:

> Further the claimant testified she often experienced problems concentrating and was having confusing thoughts since being diagnosed with cancer. However, I find this testimony is not supported by the record. Specifically, the record documents a psychologist [Lilly] reporting [in November 2004] the claimant having a generally appropriate affect, with clear sensorium and logical thought, and concentrating well enough to perform math calculations. He reported the claimant demonstrated relatively good judgment and insight, and that her memory difficulties demonstrated during the examination appeared to be related to state-dependent processes and inattentive processing. Further the record documents the claimant informing [Lilly] that when she became anxious and aggravated, she would take a pill and about 20 minutes later would feel as if she "could face the world again." [Tr. 421-23.]

(Tr. 20.) The ALJ further stated:

> The Medical Expert present at both hearings, Dr. John H. Simonds, thoroughly reviewed the objective medical evidence and presented impartial testimony that was well reasoned and strongly supported by the evidence from treating sources, as follows.
>
> The claimant's most significant problem area is the malignant melanoma. .
> . .
>
> . . . The record establishes the claimant has been treated for gastroesophageal reflux, hiatal hernia, benign cysts of the breasts, and fractured metacarpal (fractured ribs—with no follow-up details). She has diagnoses of major depression, attention deficit hyperactivity disorder, anxiety, and a GAF of

56 (moderate range) following a psychological evaluation in November 2004 by Dr. Lilly at Burns-Lilly & Associates, who perform one-time evaluations—they do not do treatment. Essentially she had the same diagnosis 1½ years later in January 2006 when she was again evaluated at Burns-Lilly & Associates. Secondary to some stresses and losses cited, her GAF was 50—a GAF one would expect with some bereavement. This also is a one-time evaluation; shows a GAF change; so the record documents two GAF scores. The record is absent ongoing progress notes by a psychiatrist. The record contains treatment records by Dr. Gupta wherein he has reported she was taking Lexapro (an antidepressant) that was changed to Prozac. Depression was mentioned in his notes, but the severity level was omitted. Then the record establishes his reporting that the claimant had no depression and no anxiety following the change to Prozac, indicating the medication helped. Therefore, in summary, based on these reports as documented by the record, the claimant's psychiatric conditions [d]o not meet or equal a mental Section contained within the Listing of Impairments.

. . . .

Dr. Simonds testified the record was absent limitations regarding any lifting or walking, so the claimant would certainly be able to perform job duties at the light (maybe medium) level of exertion. He testified that psychiatrically, the claimant's anxiety would limit contact with the public to superficial. Further, she is limited to performing simple job duties due to having marked limitations regarding details.

(Tr. 21-22 (internal citations omitted).) Next, the ALJ reviewed further information developed at a supplemental hearing conducted on August 28, 2008, in which Dr. Simonds' testimony was continued, stating:

[Plaintiff's] attorney referenced an examination by Dr. Lilly performed in November 2004, and asked Dr. Simonds if he agreed with the doctor's diagnosis of recurrent major depressive disorder, attention deficit hyperactivity disorder, and anxiety disorder. Dr. Simonds testified that this diagnosis was the result of a mental status examination and history taken at the time of the examination, but it is not correct if the examiner is stating the depression is recurrent because of the recurrence of melanoma. The record establishes the claimant experienced an original occurrence and had a fear of recurrence, but there was no recurrence.

The attorney referenced the State Agency determination wherein a physician annotated an impairment of organic mental disorder. Dr. Simonds testified he was not aware of the record documenting organic mental disorder, as

7

that impairment would indicate brain dysfunction. I brought out the fact that a subsequent State Agency determination completed by another physician was absent this impairment. Dr. Simonds testified that the State Agency physicians are review doctors, and that he did not find documentation of evidence of organic mental disorder in the record. He testified affective disorder is depression and anxiety—that has been addressed at the prior hearing. He testified mostly the claimant's concentration is in the moderate range as reflected in the assessment. Dr. Simonds further testified that in a later examination by the same physician (Dr. Lilly), the claimant's GAF went from 56 in November 2004 to 50 in January 2006 secondary to bereavement and adjusting to a new family situation that he stated was an adjustment disorder. He testified the claimant's loss and adjustment would have some affect possibly to result in lowering the GAF score; however, this situation would not be continuous in duration, but rather short-lived because one recovers.

The attorney referenced a State Agency determination dated the month following this examination of January 2006 wherein the claimant is rated moderately limited in maintaining social functioning, and in maintaining concentration, persistence, or pace. Dr. Simonds testified that this was probably true since it followed closely upon the January 2006 examination that included issues that were foremost in the patient's mind at the time (as discussed above), so she would be markedly limited in these areas—but this does not indicate this condition would be forever, but rather for essentially a six-month period. The attorney then stated that the State Agency personnel subsequently reported the claimant could understand and remember and carry out very short and simple instructions. Additionally, Dr. Simonds testified that with medication (Prozac) and changes in the claimant's life events, the record established that by November 2007 her depression was rated as "not present" demonstrating improvement with time and treatment.

(Tr. 23-24 (internal citations omitted).) Finally, the ALJ concluded as follows:

Based on the record as a whole, I find that the cited medically determinable mental impairments do not present work limitations of a level of severity to preclude performing simple job tasks consistent with unskilled job duties on a consistent basis. . . .

I find the record establishes the claimant has a mild degree of limitation in activities of daily living—she resides alone and requires no assistance in performing activities of daily living. The record establishes the claimant has moderate difficulties in maintaining social functioning because she is restricted to indoor activities out of the sunlight due to her skin condition. The record establishes that while the claimant has moderate difficulties (at the most) in

concentration, persistence or pace while understanding and remembering and carrying out *detailed* instructions, she is not significantly limited in understanding and remembering and carrying out *very short and simple instructions*. Therefore, I find the record establishes the claimant is mildly limited in maintaining concentration, persistence or pace while performing simple, unskilled job duties. Further, the record documents no episodes of decompensation. Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied. I also find the evidence fails to establish the presence of the "paragraph C" criteria. Accordingly, I have translated the above "B" criteria findings into work-related functions in the residual functional capacity assessment below.

(Tr. 25 (emphasis in original).)

As to Hickey's RFC, the ALJ stated:

Based upon the medical evidence described above and the subjective complaints of the claimant, as supported by the record, I find her combination of impairments results in the following limitation on her ability [to] do sustained work related physical and mental activities in a work setting on a regular and continuing basis: lifting of no more than 20 pounds at a time with the frequent lifting of up to 10 pounds, sitting no more than 2 hours out of an 8-hour workday, and standing and walking, off and on, for a total of 6 hours out of an 8-hour workday. Further, in view of her medically determinable skin impairment and secondary depression/anxiety, she is limited to superficial contact with the public; infrequent collaboration with coworkers; no job duties performed outdoors; and lower-end-of detail work instructions while performing job duties at the light level of exertion.

. . . .

In summary, I find the record establishes the claimant is status post removal and biopsy of a lesion on the lower right extremity in March 2003 that was a positive malignant melanoma. . . . She has been treated for anxiety and depression secondary to being diagnosed with cancer and melanoma in 2002. However, she has reported being able to "face the world again" in approximately 20 minutes after taking her prescribed medication. Examinations have documented findings of logical thought, relatively good judgment and insight regarding managing her history of cancer, and she has been determined to be a good candidate to benefit from treatment thereby enhancing her employability. By October 2006, the record documents she was coping well on her current regime that the treating source determined was working well for

anxiety/depression. Further, the claimant has self-reported not only having a support system, but also engaging in family gathers, walking, and occasionally watching television. The record documents her subjective GAF scores range from 50 to 56. A GAF (Global Assessment of Functioning) scale is a completely subjective measure of a claimant's ability to function in the psychological, social and occupational areas of life. . . . I do not find a subjective GAF of 50 to be conclusive the claimant is permanently disabled. I consider it to be a threshold evaluation to qualify her for psychiatric services and to serve as a basis for prescribing psychotropic drugs which have enabled the claimant to work in the past. The claimant's failure to pursue this treatment responsibility is also significant. Thus, as previous cited, I find the record establishes the claimant's medically determinable mental impairments present no work limitations while performing simple job tasks consistent with unskilled job duties (such as she has performed in the past).

(Tr. 25-27 (internal citations omitted).) Based on the RFC assessment, the ALJ opined that

Hickey was able to perform her past relevant work as a "housekeeper/cleaner." (Tr. 28.) In

reaching this decision, the ALJ noted that Harden, the VE, testified that Hickey had the past

relevant work as housekeeper/cleaner, which was a job in the "light exertional level with an [sic]

specific vocational preparation of 2 (unskilled)."[4] (Tr. 28.) The ALJ, noting that Hickey's

attorney had cross-examined Harden regarding Hickey's ability to perform her past relevant

work, found "that the objective evidence of record does not support the limitations suggested by

the attorney in his hypotheticals." (Tr. 30.) Instead, the ALJ found that the "record establishes

the claimant needs no assistance in maintaining a residence, shopping, or performing activities of

daily living, and has responded favorably to all treatment." (*Id.*) Consequently, the ALJ found

Hickey was not disabled. (Tr. 30.)

---

[4] Specific vocation preparation is defined "as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, App. C (rev. 4th ed. 1984).

E.    Discussion

1.  Past Relevant Work

The first issue is whether substantive evidence supports the ALJ's finding that Hickey could perform her past relevant work as a housekeeping cleaner. In her brief, Hickey argues, in essence, that there is no evidence, based on the ALJ's RFC determination that Hickey can stand and walk, off and on, for a total of six hours during an eight hour work day, that Hickey can perform her past relevant work as a housekeeping cleaner. (Pl.'s Br. at 15; see Pl.'s Br. at 12-15.) In support of this argument, Hickey claims that there is no evidence that the job of a housekeeping cleaner would allow standing and walking "off and on" and compares the differences in the testimony of VE Bennett at the first hearing to the testimony of VE Harden at the second hearing based on two slightly different RFC determinations. (Pl.'s Br. at 13-14.)[5]

"A vocational expert is called to testify because of his familiarity with job requirements and working conditions." Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995) (citing Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." Id. The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. See Morris v. Bowen, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical presented to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's

---

[5] The Court notes that Hickey also argues in this same section of his brief that the ALJ's RFC determination that she can perform detailed work instructions is not supported by substantial evidence because the ALJ also found that Hickey had "moderate difficulties in concentration, persistence or pace while understanding, remembering and carrying out detailed instructions but is not significantly limited in carrying out very short and simple instructions." (Pl.'s Br. at 15.) The Court will address this issue in section I.E.2.

residual functional capacity assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). If the ALJ's hypothetical fails to incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Id.* A claimant's failure to point out problems in a defective hypothetical does not salvage that hypothetical as a proper basis for a disability determination. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). When the ALJ includes all disabilities supported by the evidence and provides Plaintiff's counsel the opportunity to correct the hypothetical question and suggest additional disabilities not recognized by the ALJ's findings, the VE's answer to the hypothetical question can provide substantial evidence supporting a denial of such benefits. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

In this case, the ALJ determined that Hickey had the RFC to lift no more than twenty pounds at a time, lift no more than ten pounds frequently, sit no more than two hours in an eight-hour workday, stand and walk "off and on, for a total of 6 hours out of an 8-hour workday," have only superficial contact with the public and infrequent collaboration with co-workers, perform no job duties outside, and have only "lower-end-of detail work instructions" while performing job duties indoors at the light level of exertion. (Tr. 25-26.) Based upon this RFC, the ALJ found that Hickey was capable of performing her past relevant work as a "housekeeper/cleaner." (Tr. 28.) In making this determination, the ALJ appears to rely on the testimony of Harden, the VE at the third hearing before the ALJ,[6] who testified that Hickey was capable of performing her past

---

[6] In the Fifth Circuit, consideration of vocational factors, including the testimony of a VE, is permissible but not required at Step Four of the evaluation process under 20 C.F.R. § 404.1560(a). *See Thomas v. Shalala*, 56 F.3d 1385, 1995 WL 337785, at *2 (5th Cir. 1995).

relevant work as a housekeeping cleaner.[7]  (Tr. 28.)  In his hypothetical question to Harden, the ALJ asked Harden to consider a claimant that was limited to working, *inter alia*, at the light exertional level.  (Tr. 913.)  The ALJ did not, however, specifically include the limitations that Hickey could sit no more than two hours in an eight-hour workday and stand and walk, off and on, for a total of six hours in an eight-hour workday.  Thus, the issue is whether the hypothetical posed by the ALJ that limited Hickey to performing jobs at the light exertional level includes the above noted sitting, standing, and walking limitations.  As to the specific facts in this case, the Court concludes that the ALJ's hypothetical did not specifically incorporate such limitations but that such error was harmless in light of the definition of light work.

To begin with, the regulations define the exertional requirements of light work as follows:

> Light work includes lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

---

[7] The job description of an housekeeping cleaner is as follows:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties:  Sorts, counts, folds, marks, or carries linens.  Makes beds.  Replenishes supplies, such as drinking glasses and writing supplies.  Checks wraps and renders personal assistance to patrons.  Moves furniture, hangs drapes, and rolls carpets.  Performs other duties as described under CLEANER (any industry) I Master Title.

Dictionary of Occupational Titles ("DOT") § 323.687-014 (rev. 4th ed. 1991).

20 C.F.R. §§ 404.1567(b), 416.967(b). Social Security Ruling ("SSR") 83-10 further clarifies that "frequent" lifting or carrying would require being on one's feet for up to two-thirds of the workday, and the full range of light work requires walking or standing, off and on, for a total of approximately six hours out of an eight-hour workday with sitting occurring intermittently for the remaining time. SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983).

On its face, the definition of light work appears to incorporate the very findings that Hickey claims were omitted from the hypothetical presented to Harden as it specifically includes an ability to stand and walk, off and on, for a total of six hours per day. However, "the functional capacity to perform light work includes the functional capacity to perform sedentary work unless a determination is made that there are additional limiting factors on a person's physical RFC." *Burkhardt v. Comm'r of Soc. Sec. Admin.*, No. 3:08-CV-02032-B (BH), 2009 WL 3849617, at *13 (N.D. Tex. Nov. 16, 2009); *see Harris v. Callahan*, 11 F. Supp. 2d 880, 888 n.5 (E.D. Tex. 1998) ("[T]he ability to perform light work includes the ability to perform sedentary work."). *See also* 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 202.00 ("The functional capacity to perform a full range of light work includes the functional capacity to perform sedentary as well as light work."). To perform the full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 83-10, 1983 WL 31251, at *5. "Thus, the functional capacity to perform the full range of light work also requires sitting for a total of approximately six hours of an eight-hour workday as is required to perform the full range of sedentary work." *Burkhardt*, 2009 WL 3849617, at *13 (citing 20 C.F.R. § 416.967(b), SSR 83-10, 1983 WL 31251, at *5).

14

In this case, the ALJ determined in his RFC assessment that Hickey could not sit for more than two hours each day. Such a finding means that Hickey does not have the functional capacity to perform the full range of light work, which, by incorporating the full range of sedentary work, requires the ability to sit for a total of six hours of an eight-hour workday. Thus, the ALJ erred by failing to include the sitting limitation in his hypothetical.[8]

Any error in this respect is harmless, however, because the job of a housekeeping cleaner, which is classified as light work and, based on the actual definition, which involves much walking and standing, and does not appear to require the performance of duties that would exceed the actual limitations found by the ALJ in his RFC determination. *See Ramsey v. U.S. Comm'r Soc. Sec. Admin.*, No. 06-1986, 2008 WL 341698, at *1 (W.D. La. Feb. 7, 2008) (stating that any failure of the ALJ to include a limitation that the claimant had moderate difficulty in maintaining concentration, persistence and pace into the hypothetical to the VE was harmless "because the jobs identified by the VE are unskilled and have no apparent requirements for concentration, persistence or pace of any significant degree."); *Seay v. Astrue*, No. CV07-1454-LC, 2008 WL 4861980, at *9 (W.D. La. Oct. 17, 2008) (finding that the ALJ's failure to incorporate the claimant's mental limitations as to social functioning and concentration, persistence, or pace into the hypothetical questions to the VE was harmless because the claimant's past relevant work consisted of jobs that were consistent with the claimant's ability to work). Consequently, remand is not required on this issue.

---

[8] Although neither party addressed this particular point, the Court concludes it must be addressed as it is applicable to the issue of whether the ALJ included all limitations in the hypothetical.

Hickey claims, in essence, that the ALJ should not have been able to rely on Harden's opinion without explaining why he was discounting the prior opinion of Bennett, the VE who testified at the first hearing. Hickey's argument is not persuasive because the ALJ had determined that Hickey had a different RFC at the time of the third hearing.[9] Consequently, in light of the different RFC, the testimony of the vocational expert at the third hearing regarding whether Hickey could perform her past relevant work would, unsurprisingly, be different, than the testimony of a different vocational expert at a prior hearing. *Cf. Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) ("The ALJ could rely on portions of the expert's answer without endorsing all of the expert's conclusions.")

2. Residual Functional Capacity

Hickey also claims, in essence, that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to include all of Hickey's impairments into his RFC assessment that were found by the SAMCs. (Pl.'s Br. at 15-18.) Specifically, Hickey argues the ALJ failed to include the following findings made by Cox and Ferguson, the SAMCs: that Hickey was "moderately limited in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; complete a normal work day and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or

---

[9] The Court notes that Hickey does not argue that the ALJ's assessment of her RFC *as to the issues of her limitations of sitting, walking, or standing* is not supported by substantial evidence. Thus, the Court will not address this issue.

exhibiting behavioral extremes; and to respond appropriately to changes in the work setting." (Pl.'s Br. at 15-16.) Hickey also argues that the ALJ erred when he found that Hickey had moderate difficulties in concentration, persistence or pace while understanding, remembering and carrying out detailed instructions but failed to explain why he ultimately determined in his RFC assessment that Hickey can follow detailed work instructions. (Pl.'s Br. at 15-16.)

An ALJ is to consider all medical opinions in determining the disability status of a claimant. 20 C.F.R. §§ 404.1527(b), 416.927(b). Findings of fact made by State Agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p, 1996 WL 374180, at *2-4 (S.S.A. July 2, 1996). Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not bound by the State Agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SSR 96-6p, 1996 WL 374180, at *2.

In addition, federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt 4, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The regulations require the ALJ to evaluate the degree of functional loss resulting from the claimant's

17

mental impairments. 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). If an impairment is found, the ALJ must evaluate the claimant's limitations in four functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).[10] The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. §§ 404.1520a(e), 416.920a(e).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine if it meets or equals a listed mental disorder under Sections 12.00-12.09 of the Listing. 20 C.F.R. §§ 404.1520a(d)(2). To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. § 404.1520a(d)(3); *see Boyd*, 239 F.3d at 705.

---

[10] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.*

RFC is what an individual can still do despite her limitations.[11]  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.  See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  *Id.*  RFC is not the least an individual can do, but the most.  SSR 96-8p, 1996 WL 374184, at *2.  The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered and is based upon all of the relevant evidence in the case record.  *Id.* at *3-5.

The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence.  *Id.* at *7.  In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe.  *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5.  The RFC assessment is based upon "all of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations.  *Id.*  When the ALJ considers non-exertional

---

[11] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from Step Three to Step Four.  *Id.*

limitations,[12] he is to consider all work-related limitations and restrictions that do not depend on an individual's physical strength and is to express such non-exertional capacity in terms of work-related functions. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

On December 8, 2004, psychologist Jim Cox ("Cox"), a SAMC, filled out a "Mental Residual Functional Capacity Assessment" form ("MRFC"). (Tr. 425-27.) In Section I of the MRFC, which is titled "Summary Conclusions" and consists of twenty mental function items grouped under four main categories, Cox opined that Hickey was moderately limited in her ability to 1) understand, remember, and carry out detailed instructions; 2) maintain attention and concentration for extended periods; 3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 4) complete a normal work-day and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; 5) accept instructions and respond appropriately to criticism from supervisors; and 6) respond appropriately to changes in the work setting. (Tr. 425-26.) In Section III of the MRFC, which is titled "Functional

---

[12] A "non-exertional limitation" is a limitation or restriction which affects a claimant's "ability to meet the demands of jobs other than what the strength demands." 20 C.F.R. §§ 404.1569a(a), 416.969a(a).

Capacity Assessment," Cox opined that Hickey was able to remember, understand, and carry out instructions, adapt to changes in the work setting, make judgments commensurate with work, and respond appropriately to supervision, coworkers, and work situations. (Tr. 427.)

In a "Psychiatric Review Technique" form ("PRTF") also dated December 8, 2004 (Tr. 429-442), Cox opined that Hickey suffered from "Adult ADHD" (an organic mental disorder), major depressive disorder, and generalized anxiety;-none of which precisely satisfied the diagnostic criteria of any impairment in the Listing. (Tr. 430-34) Cox also found that Hickey was mildly restricted in her activities of daily living and in maintaining social functioning and had moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 439.)[13]

In a MRFC dated February 1, 2006, psychologist John Ferguson ("Ferguson"), another SAMC, opined in Section I of the MRFC that Hickey was markedly limited in her ability to understand, remember, and carry out detailed instructions. Ferguson further opined that Hickey was moderately limited in her ability to 1) maintain attention and concentration for extended periods; 2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and 3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 499-500; see Tr. 499-501.) In Section III of the MRFC, the Functional Capacity Assessment section, Ferguson stated that Hickey retained the ability to understand and follow simple instructions, interact adequately with co-workers and supervisors, and adapt to routine work environments. (Tr. 501.)

---

[13] In a PRTF Form dated August 31, 2005, Mark Boulos ("Boulos"), another SAMC, opined that Hickey suffered from an affective disorder but that there was insufficient evidence to substantiate the presence of the disorder. (Tr. 446; see Tr. 443-56.) He further opined that there was insufficient evidence to determine whether Hickey was limited in her activities of daily living or had difficulties in maintaining social functioning, concentration, persistence, or pace. (Tr. 453.)

In a PRTF also dated February 1, 2006, Ferguson also found that Hickey suffered from "adhd" and major depression;—neither of which precisely satisfied the diagnostic criteria of a Listing. (Tr. 502-05.) Ferguson further opined that Hickey was mildly restricted in her activities of daily living and had moderate difficulties in maintaining social functioning, concentration, persistence, or pace. (Tr. 512.)

In determining that none of Hickey's impairments met or equaled an impairment in the Listing, the ALJ went through a thorough review of the evidence, including the following: (1) Hickey's testimony at all three hearings, (2) testimony from Simonds, the ME, (3) examination and treatment records, (4) psychological examinations performed by Bobbie Lilly, Ph.D., ("Lilly") in November 2004 and January 2006 (Tr. 421-23, 494-497), (5) treatment records from Sat Gupta, D.O., ("Gupta") one of Hickey's treating sources, (6) a PRTF dated December 8, 2004 "wherein [Cox] annotated an impairment of organic mental disorder" (Tr. 429-42), (7) a subsequent PRTF completed by Boulos and dated August 31, 2005 that did not indicate Hickey suffered from an organic mental disorder (Tr. 443-56), (8) Ferguson's PRTF dated February 2, 2006, which rated Hickey moderately limited in maintaining social functioning and concentration, persistence, or pace (Tr. 502-15), and (9) a letter from Martin McGonable, M.D., ("McGonable") another one of Hickey's treating sources. (Tr. 20-25.)

Based upon the evidence in the record, the ALJ concluded that Hickey had a mild degree of limitation in her activities of daily living, moderate difficulties in maintaining social functioning because she was restricted to staying indoors out of the sunlight due to her skin condition, and moderate difficulties (at the most) in concentration, persistence or pace while understanding, remembering, and carrying out detailed instructions but not while understanding,

remembering, and carrying out very short and simple instructions. (Tr. 25.) Based upon these findings, the ALJ ultimately concluded that Hickey was mildly limited in maintaining concentration, persistence or pace while performing simple, unskilled job duties. (*Id*.) The ALJ further noted that, although Hickey's mental impairments did not meet or equal any Listing, he translated such findings "into the work-related functions in the residual functional capacity assessment." (Tr. 25.)

As to Hickey's RFC, the ALJ determined that Hickey had the RFC to, *inter alia*, have limited superficial contact with the public, infrequent collaboration with coworkers, and "lower-end-of detail work instructions while performing job duties indoors at the light level of exertion." (Tr. 25-26.) In reaching this decision, the ALJ stated that he considered, among other things, the above evidence as well as the following additional evidence: (1) evidence that Hickey was coping well with her medication and it was "working well for anxiety/depression" (Tr. 26), (2) Hickey's own testimony that she had a support system, engaged in family gatherings, walking, and occasionally watching television (Tr. 26), (3) medical examination notes from Hickey's treating source showing that Hickey's impairments were improved overall (Tr. 27), and (4) statements from Hickey and other evidence in the record showing that Hickey's subjective complaints regarding her impairments were exaggerated and otherwise not supported by the record (Tr. 28).

The ALJ followed the technique set forth above for the evaluation of Hickey's mental impairments. *See generally* 20 C.F.R. §§ 404.1520a, 416.920a. As to the issue that the ALJ erred by failing to include all of Hickey's impairments into his RFC assessment that were found by the SAMCs, Hickey specifically claims that the ALJ failed to mention the functional

23

limitations reported by SAMCs Fox and Ferguson in Section I of the MRFC forms, dated December 8, 2004 and February 1, 2006, respectively. While the Court agrees that the ALJ did not specifically mention the limitations noted in Section I of the above-referenced MRFCs, there is "nothing in the commissioner's regulations or rulings that requires an ALJ to make findings concerning each of the limitations listed [in Section I] on the 'Summary Conclusions' portion of the [MRFC] forms utilized by the SAMCs in assessing a claimant's mental residual functional capacity." *Huber v. Astrue*, No. 4:07-CV-477-A, 2008 WL 4694753, at *7 (N.D. Tex. Oct. 22, 2008).

Furthermore, according to the Commissioner's Programs Operations Manual System ("POMS"), Section I of the MRFC, which contains the limitations that Hickey claims should not have been left out of the RFC, is "merely a worksheet to aid [the medical consultant] in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." POMS § DI 24510.060B.2. Section III of the MRFC "is for recording the mental RFC determination." POMS § DI 24510.060B.4. "It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.* Thus, based upon the MRFC form itself, it was not error for the ALJ to fail to include or discuss the items from Section I of the forms in assessing Hickey's RFC as they did not contain the actual opinions of Cox and Ferguson as to Hickey's RFC. Instead, it is Section III that contains the actual mental RFC assessment.

In Section III of the MRFC, Cox opined that Hickey "is able to 1) remember, understand, and carry out instructions[,] 2) adapt to changes in a work setting[,] (3) make judgments

commensurate with work[, and] 4) respond appropriately to supervision, coworkers, and work situations." (Tr. 427.) In Section III of the MRFC, Ferguson opined that Hickey "retains the ability to understand and follow simple instructions[,] to interact adequately with coworkers and supervisor[,] and adapt to routine work environment. (Tr. 501.) Thus, according to Section III of the MRFCs, Hickey's only real limitation was that she possibly needed to be limited to simple instructions, a limitation that the ALJ considered and included in his RFC determination when he limited Hickey to work instructions at the "lower-end-of detail."

In addition, it is clear that the ALJ did review the opinions of Cox and Ferguson in the PRTFs dated December 8, 2004 and February 1, 2006, respectively, in his decision. In fact, the ALJ adopted Cox and Ferguson's ultimate conclusions that Hickey was mildly restricted in her activities of daily living and had moderate difficulties in maintaining concentration, persistence, or pace (Tr. 439, 512) and Ferguson's more restrictive opinion that Hickey had moderate difficulties in maintaining social functioning (Tr. 512). The ALJ then incorporated such nonextertional limitations into his RFC assessment, specifically limiting Hickey to only superficial contact with the public, infrequent collaboration with coworkers, and "lower-end-of detail work instructions while performing job duties indoors at the light level of exertion." (Tr. 26.)

The record, taken as a whole, does not indicate that the ALJ failed to consider the nonexertional limitations noted by the SAMCs. It is apparent that the ALJ did not "ignore the SAMCs' opinions, and the ALJ's explanation of the weight assigned those opinions is consistent with the purposes of the regulations and rulings that govern the assessment of medical source opinions." *Huber*, 2008 WL 4694753, at *8. Moreover, Hickey has not affirmatively

25

demonstrated prejudice due to any alleged procedural shortcomings in the ALJ's articulation of the weight assigned to the SAMCs' opinions. *See Hall v. Schweiker*, 600 F.2d 116, 119 (5th Cir. Unit A 1981) (per curiam).

Furthermore, even assuming that there is some inconsistency between the limitations noted by Cox and Ferguson in the MRFCs and the ALJ's RFC assessment, "[t]he ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). In this case, the ALJ 1) properly considered and discussed the evidence in the record, including the opinions of the SAMCs, in assessing Hickey's RFC, 2) adequately explained the reasoning for his RFC decision and for giving less weight to certain evidence, and 3) exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991); *Cook v. Astrue*, No. 7:07-CV-0710-BF, 2008 WL 4454044, at *8 (N.D. Tex. Oct. 2, 2008) ("The ALJ was entitled to consider the consistency of the SAMCs' findings with the medical and clinical evidence and to consider the record in its entirety when assessing [the claimant's RFC].") Because there is substantial evidence in the record that supports the ALJ's RFC assessment, the Court concludes that the ALJ did not err by failing to appropriately consider all of the functional limitations imposed by Hickey's impairments. Consequently, the Commissioner's decision should be affirmed.

As to Hickey's claim that the ALJ failed to explain how a moderate limitation in understanding, remembering, and carrying out detailed job instructions would not interfere with

her ability to perform detailed work, the Court disagrees with Hickey's characterization of the ALJ's RFC determination. Contrary to Hickey's claim, the ALJ did not determine that Hickey had the RFC to perform detailed work. Instead, the ALJ determined that Hickey had the RFC to handle "*lower-end* of detail work instructions." (Tr. 26) (emphasis added). Limiting Hickey to jobs at the lower-end of detail work is not necessarily inconsistent with a moderate limitation in understanding, remembering, and carrying out detailed job instructions. Furthermore, even assuming some inconsistency exists, any such error was not prejudicial to Hickey as there is no evidence that her past relevant work as a housekeeping cleaner, which has a reasoning development level ("RDL") of one,[14] requires Hickey to perform detailed work. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("This court will not vacate a judgment unless the substantial rights of a party have been affected."); *Culwell v. Astrue*, No. 4:07-CV-596-A, 2008 WL 3551103, at *9 (N.D. Tex. Aug. 13, 2008) ("The administrative record contains substantial evidence supporting the ALJ's determination that [the claimant] is not disabled . . . and any deficiencies in the ALJ's decision did not substantially prejudice the outcome."); *Medina v. Barnhart*, No. SA04CA1057FBN, 2005 WL 2708789, at *9 (W.D. Tex. Oct. 19, 2005) (failure to discuss mental demands of past work did not prejudice claimant and did not require reversal because substantial evidence showed that the alleged impairments did not restrict his ability to work).

---

[14] RDL One requires the ability to "[a]pply common sense understanding to carry out simple one- or two-step instructions[ and d]eal with standardized situations with occasional or no variable in or from these situations encountered on the job." DOT, App. C (rev. 4th ed. 1991).

3. Opinion Evidence[15]

Hickey argues that the ALJ "failed to consider the opinion rendered by Lilly, the consulting examiner, nor did he express any reasons for disagreeing with her conclusions." (Pl.'s Br. at 19; Pl.'s Reply Br. at 6-7.) Specifically, Hickey claims that the ALJ erred by ignoring the opinion of Lilly, "who examined the Plaintiff on two occasions and determined both times that she is unable to work," and instead improperly relied on the opinion of Simonds, the non-treating and non-examining ME. (*Id.*)

The regulations, rulings, and relevant case law reflect that the ALJ should weigh all of the medical source opinions and articulate the reasons underlying the decisions he has made. *See generally* 20 C.F.R. §§ 404.1527(b), 416.927(b). While opinions on the ultimate issue of disability status under the regulations are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. § 404.1527(b), (e)(1), 416.927(b), (e)(1). Mental health professionals must have specialized training in order to evaluate mental functioning, including depression. *Gonzalez v. Barnhart*, No. SA-05-CA-0282 RF, 2006 WL 1875912, at *5 (W.D. Tex. June 30, 2006). The ALJ is entitled to consider treatment history or any other relevant factor that tends to support or contradict a medical source opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). An ALJ who discounts the diagnoses and opinions of specialists in the field without providing

---

[15] The Court notes that in the section of his brief relating to the issue of opinion evidence, Hickey refers to, *inter alia*, statements by Gupta and McGonable, Hickey's treating physicians, that Hickey could not, in essence, engage in any type of employment. (Pl.'s Br. at 18-19; *see also* Pl.'s Reply Br. at 6-8.) It appears that Hickey mentions these opinions only as indications that such evidence existed in the record. Since it is unclear whether Hickey is asserting that the ALJ erred in rejecting these treating source opinions, the Court does not address that issue. In addition, Hickey also argues in the same section that the ALJ "failed to give due deference to the opinions expressed by the State Agency physicians." (Pl.'s Br. at 19.) The Court has already addressed this issue in the preceding section.

specific, legitimate reasons for doing so has "impermissibly substitute[d] a layman's view of a disorder in lieu of an expert opinion." *Gonzalez*, 2006 WL 1875912, at *5.

In this case, contrary to Hickey's claim, the ALJ did consider the opinions rendered by Lilly. In his decision, the ALJ specifically referenced Lilly's examinations of Hickey, detailed some of the specific findings made by Lilly, and provided reasons for discounting some of such findings. (*See* Tr. 20-24.) The ALJ indicated that he also relied on, *inter alia*, the following medical evidence in the record in determining that Hickey was not disabled: (1) the testimony of Simonds, the ME, (2) medical and treatment records regarding her cancer, (3) treatment records from Gupta, one of her treating physicians,[16] (4) State Agency determinations performed by Cox, Boulos and Ferguson, and (5) a letter dated July 15, 2008 from McGonable, a treating source, as to an overall description of what occurs in surgery of melanoma (*see* Tr. 734). In addition, the ALJ also evaluated Hickey's own testimony as to her symptoms and daily activities.

Based on his decision, it is clear that the ALJ gave limited weight to some of Lilly's findings because his opinions were based on two one-time evaluations and were not fully supported by other evidence in the record. Because the ALJ did consider the opinions given by Lilly and there is substantial evidence supporting the ALJ's opinion that Hickey was not disabled, the Court concludes that the ALJ did not err. Consequently, remand is not required.

---

[16] The Court notes that while the ALJ did not rely on the opinion of Gupta that Hickey had chronic pain and swelling in her right leg, was totally disabled, and not able to engage in any type of employment, the ALJ did rely on Gupta's treatment notes indicating, *inter alia*, that he had diagnosed her depression and prescribed her Prozac and that Hickey "had no depression and anxiety following the change to Prozac." (Tr. 22-23; *see, e.g.*, Tr. 621-94.)

## II. RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATIONAND CONSEQUENCES
## OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The Court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until **August 23, 2010**. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file a specific written objection to a proposed factual finding or legal conclusion by the date stated above will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## IV. ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **August 23, 2010** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed

and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 2, 2010.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv